## STATE EX REL. WALTON v. CHRISTMAS
(No. 1936; May 8, 1935; 44 Pac. (2d) 905)

In support of the application there was a brief by *T. S. Taliaferro, Jr.,* of Rock Springs, Wyoming, and oral argument by *Mr. Taliaferro* and *Ray E. Lee,* Attorney General, of Cheyenne.

In opposition to the application, there was a brief by *W. A. Muir* and *L. H. Brown,* both of Rock Springs, and *J. A. Greenwood,* of Cheyenne, and oral argument by *Mr. Greenwood.*

KIMBALL, Chief Justice.

A petition for *quo warranto* under article 46 of chapter 89, R. S. 1931, by the state on the relation of Reuel Walton, plaintiff, against H. R. Christmas, defendant, has been presented with an application for leave to file it for the purpose of instituting an original action in this court. The parties will be called plaintiff, relator and defendant, as in the tendered petition.

The relator and the defendant were opposing candidates at the last election for the office of district judge of the third judicial district. The votes as officially canvassed showed a majority for defendant who was given the certificate of election and is now holding the office. The action in effect would be a contest of the election on the claim of relator that he received a majority of the legal votes. The prayer is that we decree that defendant is not entitled to the office of district judge, and that he be ousted therefrom, and that the relator be adjudged entitled to the office.

The application for leave to file the petition was set down for hearing under § 89-4610. In opposition to the application the defendant contends that our jurisdiction to entertain the case as an original proceeding is concurrent with the jurisdiction of the district court, and that the plaintiff has failed to set forth the grounds or reasons why the petition should not be filed in the district court. He alleges that the determination of the issues of fact in the case will require the taking of a large volume of evidence.

The constitution provides that: "The Supreme Court shall have original jurisdiction in *quo warranto* and mandamus as to all state officers, * * *." Art. 5, § 3. "The district court shall have original jurisdiction of all causes at law and in equity * * * and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; * * *. Said courts and their judges shall have power to issue writs of mandamus, *quo warranto,* * * *." Art. 5,. § 10.

· It may be doubted that a district judge is a "state officer" within the meaning of § 3 of article 5 of the constitution. See: State ex rel. Hamilton v. Grant, 14 Wyo. 41, 81 Pac. 795, 82 P. 2; State v. Hurn, 106 Wash. 362, 180 Pac. 400; State v. Hoffman, 313 Mo. 667, 288 S. W. 16. The question was raised but not decided in Re Fourth Judicial District, 4 Wyo. 133, 32 Pac. 850. It need not be decided now, as it is not pressed, and there are other reasons impelling us to refuse to entertain this proposed action as an original proceeding in this court.

In the language of § 3, *supra,* giving this court jurisdiction in *quo warranto* as to state officers there is nothing to indicate that the jurisdiction should be exclusive. We may concede that sometimes a constitu-

tional grant of jurisdiction to one tribunal may by implication forbid exercise of the same jurisdiction by another tribunal. By § 10, however, the district court not only is created as the court of general jurisdiction in all causes at law and equity with express authority to issue writs of *quo warranto,* but has "original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested *exclusively* in some other court."

The view that our jurisdiction in mandamus and *quo warranto* as to state officers is not exclusive has been accepted from a very early date in our state's history, as shown by rule 28 (42 Wyo. 537) which provides that:

"In any application made to the court for a writ of *habeas corpus,* mandamus, *quo warranto,* or for any prerogative writ to be issued in the exercise of its original jurisdiction and for which an application might have been lawfully made to some other court in the first instance, the petition shall, in addition to the necessary matter requisite by the rules of law to support the application, also set forth the circumstances which, in the opinion of the applicant, render it necessary or proper that the writ should issue originally from this court, and not from such other court, and the sufficiency or insufficiency of such circumstances so set forth in that behalf will be determined by the court in awarding or refusing the application."

This rule, of course, assumes that the constitutional grant of original jurisdiction to this court in *quo warranto* as to all state officers is not exclusive. The rule, with others adopted at the same time (Feb. 20, 1891), was drafted and recommended by a committee composed of Willis Van Devanter, Charles N. Potter and A. C. Campbell. Two members of the committee, and Justice Conaway of the court, had recently served as members of the judiciary committee in the convention that framed the constitution. It is needless to say

that an interpretation by these men of a section of the article on the judiciary is entitled to great weight.

The constitutions of three other states contain provisions giving the Supreme Court original jurisdiction in mandamus and *quo warranto* against state officers, and in each of them it is held that the jurisdiction is not exclusive but concurrent with that of the courts of general jurisdiction.

The constitution of New Mexico (Art. 6, § 3) gives the Supreme Court jurisdiction in *quo warranto* and mandamus against all state officers, boards and commissions. By § 13 of the same article the district court has original jurisdiction in all matters and causes not excepted in the constitution, with general power to issue writs of *quo warranto*. On an application for leave to file an information in the nature of a *quo warranto* for the purpose of contesting the election of the state corporation commissioner, it was held that the district court had concurrent jurisdiction of the proceeding, and the application was denied. State ex rel. Owen v. Van Stone, 17 N. Mex. 41, 121 Pac. 611, 612. It was contended that the grant of jurisdiction to the Supreme Court was specific, while the grant to district courts was general, and the principle that specific terms will not be controlled by general words in another part of the same instrument was invoked. The court said:

"It is evident to our minds, however, that this principle has no application in this connection. It is to be remembered that this court is fundamentally a court of review. The mere name Supreme Court, in the light of the history of our institutions, thus establishes its character. It is expressly given plenary power of review and superintending control over all inferior courts. It is made the final arbiter of the rights of our citizens and of the state. Such powers and jurisdiction are inconsistent, to the professional mind, with the exercise of any original jurisdiction. It became neces-

sary, therefore, when it was deemed wise to confer upon this court certain original jurisdiction, to specifically point out its scope and specifically define its limits. In no other way could the result desired be accomplished. It seems clear that this grant is not, in legal contemplation, a specific grant of original jurisdiction, in the sense that it will exclude jurisdiction of other courts, but is, rather, a grant of original jurisdiction, which is merely specifically defined and limited. On the other hand, the grant of original jurisdiction to the district courts is general and comprehensive and extends to every kind and form of controversy not excepted in the Constitution, and includes specifically *quo warranto*. The grant of original jurisdiction to this court in this class of cases can in no sense be said to be an exception within the meaning of the Constitution and does not operate to exclude the district courts under their general powers."

The above case was followed in State ex rel. Holloman v. Leib, 17 N. Mex. 270, 125 Pac. 601, heard on a petition for leave to file in the Supreme Court an information in the nature of *quo warranto* against a sitting district judge for the purpose of contesting his election. It was held that the action must be commenced in the district court, though the power of the district courts of New Mexico to issue *quo warranto* and other writs is expressly limited by a proviso, that "no such writs shall issue directed to judges or courts of equal or superior jurisdiction."

The same construction has been placed on provisions of the constitutions of Washington and Arizona which, like that of Wyoming, give the Supreme Court original jurisdiction in *quo warranto* and mandamus "as to all state officers," and give the trial courts "original jurisdiction in all cases and all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." Jones v. Reed, 3 Wash. 57, 27 Pac. 1067; State ex rel. Ottesen v. Clausen, 124 Wash. 389, 214 Pac. 635; State ex rel. Bullard v. Jones, 15 Ariz. 215, 137 Pac. 544.

Assuming that a district judge is a state officer within the meaning of § 3 of article 5 of the constitution, we are of opinion that the original jurisdiction of this court in *quo warranto* for the purpose of contesting his election is not exclusive and should be exercised only on those cases where, in accordance with rule 28, supra, it is shown that "it is necessary or proper that the writ should issue originally from this court."

Is it necessary or proper that our original jurisdiction be exercised in the present case? In 1890, the court, speaking through Justice Conaway, in State ex rel. School District v. Clay, 3 Wyo. 393, 396, 31 Pac. 409, said:

"The Supreme Court is, or should be, essentially a court of appellate jurisdiction, with perhaps a limited original jurisdiction, where strong special reasons therefor intervene. The propriety of such original jurisdiction in any case in a court of last resort has been seriously questioned, involving, as it does, the sacrifice of the right and benefit of a re-examination in an appellate court, and for other reasons."

We have asssumed original jurisdiction in many cases of mandamus and in a few cases of *quo warranto* against state officers. In all such cases that we now recall, the material facts were either admitted by demurrer, settled by stipulation or shown by uncontroverted affidavits. Appellate courts are reluctant and frequently refuse to exercise their concurrent original jurisdiction when the facts are disputed. See State ex rel. La Follette v. Hinkle, 131 Wash. 86, 229 Pac. 317; Pitman v. Mercer, 118 Tex. 481, 17 S. W. (2d) 766; In the Matter of Exercise of Original Jurisdiction, 201 Wis. 123, 229 N. W. 643; State v. Gautier, 108 Fla. 390, 146 So. 562, 147 So. 240, 846. The reasons for this are obvious. The Supreme Court is not equipped for the trial of issues of fact. Plaintiff suggests that the evidence could be taken by a referee,

and we assume that is so, but we believe a trial in the district court will be more economical and satisfactory.

The plaintiff does not challenge defendant's statement that the determination of the issues of fact will require the taking of a large volume of evidence. An examination of the petition indicates that the statement is warranted. The petition charges a variety of irregular, illegal or fraudulent acts or omissions relating to the conduct of the election or the canvassing of the votes. Every precinct in Lincoln and Sublette Counties is referred to in some one or more of the charges which include: Failure of the judges of election to take the oath as judges of election or as registration officers; failure of voters to take the registration oath; differences between the "unofficial count" and the "official canvass"; erasure from the "official poll list" of ballots previously "tallied" thereon for relator; the activity on behalf of defendant of canvassers and solicitors "in and upon the polling premises"; errors in canvassing ballots and in copying the tallies into the poll books; "unlawful and fraudulent tampering and altering" of ballots and poll books, and the leaving of ballot boxes unguarded so as to give an opportunity to "several dishonest persons, whose names are unknown to relator, then and there moving in and about the voting booths, to tamper with and change the judicial ballots." It is alleged that all the judicial ballots voted in Lincoln County had been "unlawfully, purposely and fraudulently" printed on thin, purple paper in order that canvassers and solicitors might see how they were marked by the voters and more easily influence voters to vote for defendant. It is charged that in one precinct 66 votes were counted though only 50 official ballots were sent to the judges, and that in another precinct the judges permitted "a number" of official ballots to be carried away and afterwards returned marked as "absentee ballots" which

were counted for defendant. It is alleged that in at least nine precincts the will of the electors cannot be ascertained except by recount of the ballots.

The foregoing brief summary of the allegations of the petition is for the sole purpose of giving some idea of the facts that may be put in issue by defendant's answer which may also allege other facts. Having held that the district court has concurrent original jurisdiction of the proposed action, we cannot say that it is necessary or proper for this court to exercise a jurisdiction that would require it to act as the trial court in investigating the numerous questions of fact that may be at issue in the case.

The plaintiff contends that "to bring this suit in the third judicial district would violate the letter, and the whole spirit of the law"; that in such case, the "relator would be at the mercy of the usurping judge [defendant] as to, before whom, when and where the case would be tried"; that "refusal to act on the part of the judge [defendant] could only be reached by impeachment," and that "the Supreme Court would be powerless to act as there would be nothing before it, and the constitution and laws of Wyoming give no remedy."

We see no foundation for these contentions. The bringing of the action in the district court would be in accordance with both the letter and spirit of the law, as shown by the authorities brought to our attention. The defendant, of course, would be disqualified to do any judicial act in the case, except to call in another judge, as in any other action in which he is interested. Refusal to call in another judge would be ground for an appropriate proceeding in this court to require him to do so.

The application will be denied.

BLUME and RINER, JJ., concur.